MELVIN G. THAYER,

*v.*

THOMAS J. BARNEY.

1. The District Courts of this State have power to set aside the reports of referees and grant new trials on account of errors appearing therein.

2. The admissibility of certain evidence offered in this case for purposes of comparison considered and determined.

3. Instances in which the sufficiency of the foundation laid for the introduction of secondary evidence of the contents of lost books and papers is examined and passed upon.

4. A receipt made July 13th, 1864, was not required to be stamped. A lost receipt is presumed to have been stamped in the absence of anything showing that it was not stamped.

5. When defendant begins, the admission of evidence on his part not strictly rebutting, after plaintiff has closed his case, is no ground for a new trial, unless manifest injustice was the result.

This action was brought in the District Court for Ramsey county. Issue was joined, and the cause referred to a referee, who tried the same, and reported in favor of the defendant. A motion for a new trial was made to the said District Court upon a case made and settled, which was granted. Various exceptions were taken on the trial before the referee to the admission of evidence, which sufficiently appear in the opinion of the court, except that upon such trial the plaintiff offered to show the contents of a lost receipt, which was objected to by the defendant, on the ground that no foundation had been laid for the introduction of such testimony. The plaintiff testified in respect to the receipt, as follows, viz:   " I

had my receipt until some time in February or March last. I sent it from Nashville to Mr. McConnell by mail. I have asked Mr. McConnell for that letter. I could not get the receipt of him." McConnell, to whom the plaintiff testified he had mailed the receipt from Nashville, testified: "I never received a letter from Thayer (plaintiff) containing a receipt purporting to be signed by Mr. Barney, (the defendant.)" The plaintiff was allowed to testify as to the contents of the receipt, which was objected to by defendant. The plaintiff, upon cross-examination, testified: "I don't remember whether the receipt was stamped or not." The defendant's attorney moved to strike out the evidence of the contents of the lost receipt until it be shown that the same was duly stamped. The referee granted the motion and the evidence was stricken out, and the plaintiff excepted.

The defendant appeals to this court from the order granting a new trial.

Morris Lamprey and E. C. Palmer for Appellant.

R. B. Galusha and Brisbin & Warner for Respondent.

*By the Court.*—Berry, J. This is an action upon a promissory note. The answer of the defendant (now appellant) sets up first, a counter claim for board and washing furnished the respondent. In further defense, the answer alleges that from January 18th to July 13th, 1864, the parties to this action were partners, keeping the City Hotel in St. Paul; that on said 13th day of July, the respondent wishing to retire from the business, made an agreement with the appellant, to the effect that the appellant should pay to the respondent the sum originally put into the partnership by the respondent, about $1054—$500 thereof to be paid in cash, and the balance

in the note upon which this action is founded; that in consideration thereof the respondent, who during the whole time of the existence of the partnership was collector and bookkeeper, and alone had personal knowledge of the receipts, accounts and affairs of said firm, promised to account for and pay over and deliver to the appellant then and there, and that the appellant should have and receive then and there all receipts and sums of money received by, and all dues, claims, assets, accounts, records and property of every kind of or belonging to said firm during the entire period of the copartnership, the appellant to assume and pay the outstanding debts of the firm and the respondent to retire.

That the respondent falsely and fraudulently represented to the appellant, that he the respondent did account, pay over and deliver as agreed, and the appellant without personal examination of the books, or knowledge of the facts, but relying upon the said false representations of the respondent, paid him the sum of five hundred dollars, and made and de-delivered the note in suit, believing that the same evidenced the true balance of account between them.

That during the time of the copartnership, the respondent received in money and goods, $1679.24, (according to a bill of particulars annexed to the answer,) all of which belonged to the firm, and became the property of the appellant under the agreement aforesaid. That the respondent has never paid over nor accounted for any part of this sum though often requested; that the note does not evidence the state of accounts between the parties, but was given in ignorance of the facts.

For a third defense the answer states that during the existence of said partnership, the respondent received for said firm, from customers of the house, not including the persons mentioned in the bill of particulars aforesaid, more than

$2286 in money, which belonged to the defendant under the agreement aforesaid, and no part of which has been accounted for or paid to the appellant though often demanded.

For a fourth defense the answer avers that since the 13th day of July, 1864, the date of the dissolution, the respondent has received from one Baldwin eight dollars for board of said Baldwin by said firm, no part of which has been paid to the appellant.

For a fifth defense the answer alleges that during the time of the copartnership, the respondent wrongfully and fraudulently over-charged in the firm books, kept by him, for certain articles purchased for the use of the firm to the amount of $20.70, which he pocketed, and which he became liable to pay to the appellant under the aforesaid agreement, but though requested he has paid no part thereof. Of all the facts set out in these several defenses, it is alleged that the respondent had due notice and knowledge.

The reply admits the counter claim for board to the extent of $20, and admitting the copartnership, its dissolution, the fact that the respondent acted in part as book-keeper of the firm, and that he sold his interest in the concern to the appellant for $500 cash and the note in suit, substantially denies the balance of the answer.

The cause was tried by a referee, who reported a judgment for $163.50 in favor of the appellant, and over and above the amount of the note. Thereupon a motion was made by the respondent before the District Court of Ramsey County for a new trial. From the order awarding a new trial the defendant below appeals to this Court.

The counsel for the appellant, as a preliminary objection, contends that "the order granting a new trial should be reversed, because the District Judge has no authority to consider and overrule the findings of an officer of equal power

and jurisdiction, as to the particular case: the only mode of review is by appeal." As held in *Carson & Eaton vs. Smith*, 5 *Minn.*, 87, a referee is simply "the subordinate officer of the Court, acting only in an intermediate capacity as an auxiliary to the Court." He is not the court nor its coequal, and we see no reason why he should not be subject to the control of the court from which his appointment issued, nor any reason why his proceedings should not be reviewable therein. Besides, the statute evidently contemplates a motion for a new trial before the District Court, where the cause has been heard by a referee. *Pub. Stat., page* 564, *Title New Trials; Gen. Stat., p,* 483, *Title* 20.

As to the merits of the appeal we think the new trial was properly granted.

I. The defendant's attorney offered "to show that during the six months following the dissolution, the expenses of carrying on the hotel by defendant, were greater than during the copartnership; that the number of guests and boarders at the hotel during that period, was less than entertained there during the copartnership, and that the receipts during this period, from these guests and boarders, exceeded $2100 over and above all expenses." The plaintiff objected, but his objection was overruled and exception taken. Manifestly, one object of the testimony offered, was to furnish data for a comparison between the receipts, expenses and profits of the period of six months, during which the house was kept by the plaintiff and defendant, and of the period of six months when it was kept by the defendant alone.

Proof of the *number* of guests and boarders during the two periods would furnish no basis for the comparison. If the number was the same during one period as the other, it could not be inferred that the receipts were the same. The receipts would depend upon the length of time during which the

guests and boarders remained, and upon the amount actually paid by them.

Construing the offer by its precise terms, the proposed evidence would be quite immaterial. The objection to the offer *for immateriality* should have been sustained. Nor do we think that *this* objection was avoided or cured by the testimony which was received under the offer. But the case would appear to have been argued here by both parties, upon the basis that the offer was to show that the expenses of running the house were greater, and the receipts of the house less, during the six months when the house was kept by the appellant alone, than during the six months when it was kept by the firm, and that the appellant during the six months when he kept the house alone, made more than $2100 over and above all expenses. And as the case must go back for a new trial, we feel it to be our duty to examine the offer upon the theory upon which it was argued, without regard to what might appear to be a hypercritical objection to its precise language.

The appellant claims that the evidence contemplated by the offer was proper, " 1st, as tending to support the testimony of defendant, and shake that of the plaintiff.

2nd. As tending to show fraud and general dishonesty on the part of the plaintiff during the continuance of the partnership.

3rd. As tending to show what amount of money plaintiff had received during the preceding six months, and not accounted for." There occur to us to be two points of view from which this evidence may be examined.

1st. Let us suppose that evidence is introduced tending to show that the expenses of running the house were as great, or greater, and the receipts of the house less, or not more, during the six months when the house was kept by the appellant

alone, than during the six months when it was kept by the firm, and that the appellant made during the period when he kept the house alone $2,100 above all expenses. Is the inference to be drawn that the firm made as much, or more than $2,100, and that therefore the respondent did not render an honest account at the time of the dissolution? If this inference is to be drawn, it must be because the expenses are shown to have been not greater, and the receipts not less, during the period of the co-partnership, than they were during the six succeeding months.

This might be done by showing *what* the receipts and expenses were for each of the periods compared. If however the receipts and expenses during the time of the co-partnership can be shown, why not deduct one from the other, and thus arrive at the profits directly, instead of attempting to arrive at them indirectly, by a comparison with the profits of the next six months. This deduction would, be a process of simple arithmetical subtraction, would be certain, the better evidence, and evidence one degree less remote from the *factum probandum*. Let us suppose, secondly, that by reason of the imperfect manner of keeping accounts, or the loss of the books, it is impossible to show exactly what the receipts and expenses were during the time of the co-partnership, but that evidence is offered, as it was in this case, tending to show generally, but without any approach to accuracy, that the receipts of the house were as great, or greater, and the expenses less, or not more, during the six months of the partnership, than during the six succeeding months, and that the receipts and expenses and profits for the last period can be proven, is the evidence offered proper to be submitted to a jury? If it is proper to be submitted, it must be because it would have some value in enabling them to arrive at the *amount* for which a verdict should be rendered. It is not perceived that this

could be possible so long as the testimony was so general, loose and inaccurate. Evidence is not to be received for the purpose of enabling juries to *guess* at a verdict. The majority of the court are of opinion, that the evidence is in this point of view uncertain, speculative and calculated to mislead a jury, and that it ought not to be received. This in addition to the consideration that the question of what the comparative profits of the two periods were, would depend, among other things, as suggested by respondent's counsel, upon the comparative economy in conducting the business, upon the landlord's experience, his promptness in making collections, and upon the honesty, capacity and efficiency of employees. We think the referee erred in receiving the evidence, and we cannot say that he disregarded it as is claimed by the appellant. If it had no other influence upon his mind, we cannot say that it did not, as the appellant claims it ought to have done, tend in the mind of the referee, in a general way, "to support the testimony of defendant and shake that of the plaintiff."

II. The respondent contends that the new trial was properly granted, because the referee erred in receiving secondary evidence of the contents of the cash book of the firm. As a foundation for the introduction of such evidence, the appellant had testified as follows: "I have never seen the old book since the fire. I had charge of it just before the fire. I saw it a week or two before the fire. It may have been a month before. I searched for it the morning after the fire, but have not been able to find it." After describing the rapid progress of the fire by which the hotel was consumed, he says: "I gathered up the things as soon as I could after the fire; I found my books down by Moffat's; I gathered all the books I could find and put them in a box; I took them to the Union House about 9 o'clock, A. M., morning after the fire; I never saw the lost book after the fire; have made no

inquiries for the book, but have hunted all around for it; have heard no information from it; I believe it is lost. There were one or two hundred people helping at the fire. I inquired from my clerk, Mr. Mattison, for the book after the fire; he assisted me as clerk in settling my affairs after the fire; we took a general hunt for everything; I know many of the persons who were at the fire, but made no inquiry from any one for the book except Mattison."

Upon this the defendant asked leave to show the contents of the lost book. Evidence was received for that purpose, the plaintiff objecting that the foundation laid was not sufficient. The rule laid down by Mr. Greenleaf is that "if the instrument is lost, * * * the party is required to give some evidence * * * that à *bona fide* and diligent search has been unsuccessfully made for it in the place where it is most likely to be found." 1 *Gr. Evi.*, sec. 558. To the same effect 9 *Cowen*, 491; 1 *Starkie Ev.*, (387.) It is manifest from the general terms in which this rule is expressed, that it would be impossible to give a precise and inflexible definition to the words "*bona fide*," and "diligent search." What is a "bona fide and diligent search," is to be determined in great measure by the circumstances of each case. Here was a book which had been filled up and laid aside, a book not in use and of no value to any body but the defendant, and of not much to him so far as we can judge, except perhaps for the purposes of this suit. A fire breaks out suddenly, and in the night time, while the defendant is asleep, and the building in which the book is kept is consumed. One or two hundred persons assist in getting out what they can; the defendant gathered up the things saved as soon as he could in the morning after the fire, among the rest his books. The cash book he does not find. He swears that he believes it to be lost. Now this is equivalent to saying that he could not find this book, with

Thayer v. Barney.

his other goods and other books.   Where else should he look for it?  We think, in the language of Prof. Greenleaf, that that was the place "where it was most likely to be found." He could hardly be expected or required to call upon every one of the one or two hundred persons present at the fire to inquire for it.  It was not a book which any of those persons could seem to have any motive to take or to keep.

He does inquire of his clerk Matteson, who might possibly know something about it, and as he testifies (rather vaguely, perhaps,) he "gathered all the books he could find," "hunted all around for the book," "we took a general hunt for everything," we think the evidence was sufficient "to establish a reasonable presumption of the loss," which Prof. Greenleaf lays down to be "the object of the proof," 1 *Gr. Ev.*, sec. 558, and that the referee in admitting secondary evidence of the contents of the book, did not overstep his discretion.  It is very possible, however, that the presumption might have been strengthened by a little more detail as to the times, places and manner of what the witness styles his "general hunt."

III.   It is further insisted by the respondent in justification of the order for a new trial, that the referee erred in disallowing plaintiff's cross examination of the witness Barney, as to items in the ledger offered in evidence by the defendant. The ledger referred to was one of the account books of the partnership.  The defendant Barney upon his examination in chief had testified that certain entries therein were in Thayer's, the plaintiff's, hand writing, and farther as follows:  "I did not receive any of the money on these accounts.  If I did I handed it to Thayer.  No one else had authority to receive any money.  I don't know of a single instance that I received any money and did not hand it to Thayer.  The items received on the 'ledger' are from weekly boarders, &c., &c." We can conceive of no reason why it was not proper to cross-

examine Barney as to these matters, so far as the objections of the defendant rest upon irrelevancy and incompetency. A further objection made was that the evidence was "inadmissible under the pleadings, because the reply of the plaintiff alleges that this book and others show the money received by the plaintiff." This is not equivalent to an admission that the *ledger* showed the money received by the plaintiff, or that it showed the money received from the fact that entries were in the plaintiff's handwriting. As to the further objection that the offer to cross examine was too general, even if that had been made below, it would have been time to make it when some interrogatory was put going beyond the proper limits of a cross examination. We think therefore that the referee erred in refusing to permit the cross examination.

IV. We are of opinion that the referee was also in error in excluding the evidence of the plaintiff to show the *contents* of the lost cash book. The testimony of the defendant had already been received to show such contents. Thayer the plaintiff testified, " I left the cash book with Barney at that time. I never had control of it since, I do not know where it is; I saw it with him the last time I saw it. It is the same book Mr. Barney testified about that was lost." Having in this way shown the book in the defendant's possession and control, the defendant himself having admitted such possession and control, and having sworn to his own inability to find it, and to his belief that it was lost, we can conceive of nothing that was wanting to lay a proper foundation for the admission of secondary evidence of its contents. *Desnoyer vs. McDonald*, 4 *Minn.*, 518. In this connection it may be well to say that as to the balance sheets spoken of by the appellant in his points, there seems to have been no ground laid for admission of secondary evidence of their contents, and the respondent makes no point upon its exclusion.

V. We think that the testimony as to the loss of the receipt was sufficient (within the rules before laid down) to justify the reception of evidence of its contents. We also think that the referee erred in striking out this evidence upon the ground that the receipt was not shown to have been duly stamped. In the first place, so far as we discover, receipts of this kind were not required to be stamped until August 1st, 1864. *See laws U. S.* 1863–4, *pp* 298, 300. The receipt in this instance was made July 13th, 1864, before the law took effect. In the second place, in the absence of anything showing the contrary, it seems that the receipt would be presumed to have been properly stamped. *Closmadeuc vs. Carrel*, 86 *E. C. L.*

VI. The reception by the referee of testimony not strictly rebutting, after the plaintiff had closed his case, (the defendant in this case having been permitted to begin) although certainly not in accordance with the general rule, would not furnish ground for a new trial, unless actual and manifest injustice were the result. We perceive nothing of the kind here.

VII. The respondent makes several other points which we will dispose of under one head. He claims first that "there is no evidence to support the finding of the referee. Even if it were established that Mr. Thayer's accounts were incorrect, there is no evidence under the issue. He is charged with fraudulent concealment and representations as to the receipts, assets and accounts of the co-partnership. It appears that the parties had daily and common access to all the account books, register, vouchers, &c., and that they were examined at the time of dissolution. They were handed over to Barney on the dissolution, and the entire case not only fails to prove the allegation of fraud upon which the counter claim rests, but discloses good faith and frank dealing in the

plaintiff throughout." Again the respondent's counsel urges that the referee erred in receiving the *matter* of the lost cash book; that the fact even if established that plaintiff received moneys not accounted for, would prove no issue here, unless it appears that he did so in fraud of· defendant. Mr. Barney states that he repeatedly examined the book. He will not be protected in "slovenly negligence." It seems also that the "hotel register," a book in which the names of the guests were written, with the time of their arrival, &c., and containing˷check marks to indicate the payment of their bills was received on the trial against the objection of the respondent. The ledger was also received as appears above, and a great amount of oral testimony as to receipts and expenses of the house during the partnership. There was testimony as to Barney's ignorance of the state of the partnership accounts at the time of the dissolution. There was also testimony as to over charges made by Thayer, for goods purchased for the house, and testimony as to moneys received by him, and not entered upon the proper books or accounted for; testimony that by the agreement of dissolution Thayer was to account for and pay over to Barney whatever he had received, and testimony tending to show that he did not so account and pay over, but that the balance which he struck was a false balance.

It is true that there was considerable conflict in the evidence. We shall not attempt to recapitulate it in detail, as it is quite voluminous, but we think there was testimony having a tendency to show that the conduct of Thayer in keeping the books was fraudulent towards his partner, and that in the adjustment of the balance evidenced by the note in suit, Barney was deceived and defrauded by Thayer's representations and the appearance of the book. As to whether this evidence was rebutted, as to whether it was sufficient to warrant the

finding of the referee, as to its weight and conclusiveness in any degree, we express no opinion whatever, inasmuch as there will be a new trial.

We believe that we have considered all the substantial points made on the argument, and our conclusion is, that the order granting a new trial was right, and it is affirmed.