OF THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA,

## FALL SPECIAL TERM, 1881.*

## WHEELING.

### DRYDEN, ADM'R v. STEPHENS et al.

Submitted January 20, 1879, Decided November 26, 1881.

†(PATTON, J., Absent.)

1. When a sale has been made under a trust-deed, and the grantee under the deed from the trustee has sold the land to an innocent purchaser for value, the sale will not be set aside, on the ground that the price, for which it was sold, was grossly inadequate.

2. If it is agreed between the parties, that the note of a third person may be taken for the debt, and such note is so given and received, it will be a payment of the debt.

3. And if a note is secured by a deed of trust, and the grantor in said trust conveys the property, on which said trust is given, to a third party, and that third party by agreement of the debtor and creditor gives his note to the creditor for the debt and interest and executes a deed of trust to secure such new note, it is a payment of the old debt, and the first deed of trust is discharged, and if in the release or quitclaim-deed by the creditor of the first deed of trust he acknowledges payment of the debt so secured in the first deed of trust, this will not be an acknowledgment of the payment of the debt in the second trust-deed nor a release of said trust.

---

*The other cases determined at this term were reported in Vol. XVIII,
†Cause submitted before Judge P. took his seat.

4. This Court will take judicial notice of the fact, that in January, 1865, the county of Kanawha was within the military lines of the Federal army.

5. Where a party, who claims to be injured by a sale under a deed of trust, waits for nearly four years, before he files his bill to have it set aside, and in the bill charges, that the sale of the property was not advertised, as required by the trust-deed, and this charge is denied by the answer of the trustee, and the deed from the trustee recites, that the advertisement was made, and there is no proof as to the advertisement, and the rights of third parties have intervened, who for five years after the sale are not brought before the court, the *prima facie* presumption is, that the sale was advertised according to the requirements of the trust-deed, which presumption is conclusive in the absence of proof to the contrary.

   *Quœre :* After a sale and conveyance by the purchaser at a trust-sale to a third party, who had no notice of the defective advertisement, could the validity of the sale and of the deed to the purchaser under the trust-deed be questioned ?

6. Where a deed of trust is executed to two trustees to secure debts therein described; and afterwards the grantor sells and conveys the land to another, who executes a trust upon the land, and the *cestui que trust*, and one of the trustees by deed recorded acknowledge the payment of the debt secured by the first trust and release the lien, there is not such a cloud upon the title, because the other trustee did not join in the release deed, as would require the trustee in the second trust, before he attempted to sell, to resort to a court of equity to have it removed.

Appeal from a decree of the circuit court of the county of Mason, rendered on the 17th day of April, 1877, in a cause in said court then pending, wherein John Dryden, administrator, was plaintiff, and William J. Stephens and others were defendants, allowed upon the petition of said Dryden.

Hon. Joseph Smith, judge of the seventh judicial circuit rendered the decree appealed from.

The facts of the case are fully stated in the opinion of the Court :

*J. H. & J. F. Brown,* for appellant relied on the following authorities :   10 Wall. 172 ;   17 Wall. 438 ;   11 Wall. 262 ; 1 Rand. 72 ;   8 Gratt. 247 ;   5 Leigh 460 ;   Gilm. 130 ;   2 Min. Inst. 205, 223, 286 and cases cited ;   11 Gratt. 492 ;   5 Leigh 370.

*S. A. Miller,* for appellant cited the following authorities : 1 Greenl. Ev. §§ 22, 23 and notes 3, 4 ;   *Id.* §§ 189, 204, 212 ;

4 Pet. 83 ; 11 Gratt. 492 ; 4 H. & M. 422 ; Code of Va., ch. 132, § 4; 5 Leigh 370; 4 Pet. 1 ; Curtis Ed. vol. 9, p. 7.

*T. B. Swann*, for Tompkins executor, relied on the following authorities : 12 How. 180; Hill on Trustees 463 and cases cited; *Id.* 806 and notes 2, 3 and cases cited; *Id.* 479 ; *Id.* 511 ; 7 Cranch 48; 10 How. 185 ; 7 Pet. 252 ; 10 Pet. 177; 10 How. 174; 4 Mun. 161 ; 6 Mun. 42 ; *Id.* 436 ; *Id.* 83 ; 2 Rob. (old) Pr. 27 and cases cited ; 12 How. 180 ; 19 Ves. 463 ; 8 Cow. 543, 583 ; 1 Hopk. 309 ; 2 Story § 1280; Willis on Trustees 136 ; 4 Kent 349 ; 1 Stanton Ky. Dig. 555, § 97 ; 7 B. M. 358, § 95 ; 2 Mass. 252 ; 2 R. P. 17, 20; 4 Rand. 282; 3 J. C. R. 378 ; 1 Mon. 141 ; 2 Mon. 380 ; 1 Mar. 56 ; 3 Mar. 288 ; 3 Let. 371 ; 9 B. Mon. 156 ; 2 Stanton Ky. Dig. 1027, § 49 ; *Id.* § 63 ; 2 Rob. (old) Pr. 312, 16, 349; Code of W. Va., p. 607 ; §§ 50, 51 ; *Id.* p. 608, § 57 ; *Id.* ch. 134, § 4; Story Eq. Pl. 899.

*Smith & Knight*, for appellees relied on the following authorities : 3 W. Va. 438, 440 ; 5 Munf. 467 ; Dan. Chy. Pr. 966.

Johnson, President, announced the opinion of the Court :

In August, 1868, an amended bill was filed by John Dryden, administrator of Thomas R. Friend in the chancery suit then pending in the circuit court of Mason county in the name of said Thomas R. Friend against William J. Stephens and Abram Williams. In this amended bill the plaintiff alleges, that said suit was instituted in 1853 against said Stephens and Williams to enforce as an equal partner with said Stephens and Williams his right in the purchase of certain real estate in Mason county near West Columbia and in the improvements, developments and operations of the said property until its sale and in the proceeds of the sale thereof; that in said cause such proceedings were had, that in the year 1876 a decree was pronounced deciding, that said Friend was such partner and as such entitled to share to the extent of one third interest in the gains, issues and profits of said purchase and enterprise and in the proceeds of the sale thereof; that said cause was referred to a master-commissioner to settle the partnership, &c. It also appears from the proceedings in said

cause, that the real estate belonging to said co-partnership was sold in his own name by said Stephens to W. B. Robbins in the year 1853 for $58,000.00, and that a large part of said purchase-money was unpaid; that among other things it was ordered, that Henry J. Fisher of said county, who was the general receiver of the court, should collect said purchase-money or the balance thereof, and that the bonds and evidences of indebtedness should be delivered to him for that purpose by said W. J. Stephens, and out of the proceeds the said receiver should pay such debts and obligations binding on said co-partnership, as were set out and described in said order and decrees; that said receiver did receive said obligations and evidences of debt, did collect large sums thereon, and did pay out a considerable amount under said orders; that said receiver was further directed and ordered by the court to loan out upon good security other sums in his hands arising out of said partnership; that reports of said receiver not being made or being made not being satisfactory to the parties in the cause, a rule was awarded against him to make report of his acts and doings as such receiver, in answer to which the said receiver filed his written statement, and according to his request three gentlemen, C. P. T. Moore, D. W. Polsly and J. M. Phelps, were appointed to settle said receiver's account; that on the 28th day of March, 1868, the said committee made its report ascertaining a balance of $372.02 in the hands of said receiver, the said report setting out an account of receipts and disbursements by said receiver, to which report exceptions were filed by plaintiff, and the questions arising upon such exceptions are yet undecided and undetermined; that a part of the real estate bought by said Stephens and comprising a part of the co-partnership property, in which the plaintiff's intestate was interested, was certain real estate purchased by said Stephens from John Hall, John McCulloch and Moses Michael and by them conveyed to him by deed dated November 1, 1850, and duly recorded, a copy of which deed is exhibited; that for the purpose of securing to said grantees the balance of the purchase-money the said Stephens on the 16th day of December, 1850, conveyed said property to James H. Couch and G. W. Stribling, trustees, a copy of the deed of trust also being exhibited;

that on the 26th day of July, 1853, the said Stephens sold and conveyed said real estate to William B. Robbins for $58,-000.00, which deed was duly recorded and a copy exhibited; that on the same day said Robbins executed a deed of trust upon said land to James H. Couch to secure the payment of the purchase-money, the bonds for which are described in the bill, and also to secure a debt to John Hall for $1,644.72; also a debt due John McCulloch of $1,792.84.

The bill also charges, that subject to certain credits therein specified the whole principal and interest secured in the said three bonds of $10,250.00 each are now due and owing, and that the same is a binding and valid lien on the said real estate. The bill also contains the following charge: "that the debts of $1,644.72 to John Hall, and of $1,792.84 to John McCulloch, secured by and mentioned in said deed-of-trust of July 26, 1853, *are the same debts with interest added, that were secured by the deed of trust from Stephens to Stribling and Couch, trustees, dated the 16th day of December,* 1850"; that said debts were originally for the purchase-money of the property as recited in said deed; and that said debts were fully paid off and discharged by said Stephens or some one for him at some period unknown to the plaintiff, after the 26th of July, 1853, and prior to the 23d of April, 1857; that, as he is informed, Hall makes no claim thereto, but McCulloch does. In proof, that said defendants were paid, he files as an exhibit with the bill a copy of a deed made by said J. H. Couch, John Hall, John McCulloch, Moses Michael and Henry J. Fisher, assignee of said Moses Michael, to said W. J. Stephens, dated the 23d of April, 1857, which deed was recorded on the same day. He charges, that notwithstanding said payment, as shown by said deed, James H. Couch, the trustee named in the deed of the 26th of July, 1853, on the 9th day of January, 1865, sold the said real estate, at which sale C. B. Guthrie became the purchaser at $3,180.00, and said Couch and said John McCulloch on that day conveyed the said property to said Guthrie; a copy of the deed is exhibited.

The bill charges, that said last mentioned sale was fraudulent, illegal, void and of no effect; that all title legal and equitable passed out of said Couch and McCulloch by the deed of April 23, 1857; that notwithstanding this illegal sale said

C. B. Guthrie on the said 9th day of January, 1865, sold and conveyed said real estate to the West Virginia Coal and Salt Co., a copy of the deed being filed with the bill. The bill further charges, that the sale by Couch, trustee, was made without sufficient authority and without having performed and complied with the terms, covenants and conditions in said trust-deed contained and without having advertised the time and place of such sale according to the requirements of said trust and without having placed upon record any evidence of such advertisement, as expressly provided for and made a condition precedent to a sale by the terms of said trust. He further avers, that his intestate was not at any time an inhabitant of the State of West Virginia from the time of its organization as a State to his death and was never informed or knew of said sale during his lifetime, but the same was made during his absence from the State without his knowledge or consent. He then states an assignment of his interest in the said claim to John Slack in trust to pay certain debts therein mentioned.

The prayer of the bill is, that the sale and conveyance made by Couch, trustee, to Guthrie may be set aside, and also the sale by Guthrie to the West Columbia Coal and Salt Company, and that said property be subjected to the payment of the said three bonds of $10,250.00 each with interest, and for general relief.

Henry J. Fisher answered the bill; but it is not necessary to note his answer. Stephens demurred to the bill for want of equity and because proper parties were not before the court. John McCulloch answered the bill, to which the plaintiff replied generally. The defendant, McCulloch, expressly denies, that his claim was paid other than by the sale, or that it was released by the deed of April 23, 1857. He admits, that his debt is, as the plaintiff says, the same that was secured by the original deed of trust of 1850 and the accrued interest to the time of the sale from Stephens to Robbins, at which time he surrendered his original bond to Stephens and took Robbins's bond for the amount of the old debt and its accrued interest, which new bond was secured by Robbins in the deed of trust made by him to Couch, trustee, July 26, 1853. He does not know, whether Hall's debt has been paid

or not except from Hall's statement to him, that Robbins had paid his debt. He says, that as he surrendered his original bond to Stephens and took Robbins's bond for the debt and interest of his claim, which Robbins secured to him by trust upon the property, he was at all times willing to release Stephens from the debt and to release the trust of 1850 given by Stephens to secure it; but that Stephens, who agreed at the time to have the release prepared, neglected it until the 23d of April, 1857, when he executed it. He denies, that he ever released or in any other manner acknowledged the payment of the debt of Robbins. He denies any irregularities in the sale, but avers, that it was made in all respects as required by the trust-deed.

In October, 1870, Dryden, administrator, filed his second amended bill, alleging that the West Columbia Coal and Salt Company did on the 1st day of July, 1865, execute a mortgage on said property in controversy to Russell Sturgis and J. H. Young, trustees, for certain bond-holders not named therein, to secure the payment of $100,000.00; that said company also on the 1st day of October, 1866, executed a second mortgage or deed of trust on said property to secure an additional amount of bonds to be issued by the company, which mortgages or deeds of trust were duly recorded; that authority to execute the said mortgages or deeds of trust was first obtained by said company from the stockholders. Plaintiff further says, that the consideration paid by C. B. Guthrie at the sale under the trust-deed " was grossly inadequate and therefore unfair and fraudulent, and that knowledge of its being grossly inadequate and facts proving the same have come to complainant's knowledge since the filing of his first amended bill in the cause;" that " in the month of April, 1861, and for several years prior thereto complainant's intestate resided in the county of Kanawha in the State of Virginia; that on or about the 19th day of that month and year a civil war arose between the United States of America, and the so-called Confederate States of America, which continued from that time until or about the —— day of April, 1865; that soon after the commencement of said civil war the military forces of the said Confederate States occupied, held and controlled the said county of Kanawha and the

other counties in said State adjacent thereto to the entire exclusion of both the civil and military authority of the United States; that your complainant's intestate thereby became and was within the military lines and jurisdiction of said Confederate States, and it became and was unlawful for him to hold any commercial intercourse with citizens of the United States;" and that all the said time until the close of the war he was on one side of the line, and the said Couch, trustee, and McCulloch on the other, and that he could not therefore have redeemed said property by paying McCulloch his debt. He makes the new parties to the bill and repeats the prayer of the first amended bill.

On the 12th day of April, 1875, James H. Couch filed his answer to both amended bills and the plaintiff replied generally thereto. He denies, that there was any irregularity in the sale. He avers, that he proceeded to advertise the time, place and terms of sale, in the weekly *Cincinnati Gazette*, a paper printed at the time of said sale in the city of Cincinnati, Ohio, and posted a copy of said advertisement on the door of the court-house of the county of Mason as required by said trust-deed, and after having given such notice; and caused such advertisement, he proceeded in pursuance thereof to sell said land at the court-house of Mason county, on the 9th day of January, 1865, the time fixed in said notice; that he had no interest in the matter and acted fairly; that said sale was in all respects in pursuance of the deed of trust; that he has not examined the original deed of trust from Robbins and wife to him, as trustee, nor has he been able so far to find it; but he has no doubt, that upon examination of said original deed it will be found, that the clerk in recording the deed has mistaken the word "received" near the close of the deed for the word "recorded," and by mistake or inadvertance has so entered it on the record. He denies, that said property sold for a grossly inadequate sum in its then condition.

At the same time the West Columbia Coal and Salt Company filed its answer, to which the plaintiff replied generally, in which it claims to be an innocent purchaser for value, and that it had expended $100,000.00 upon the property in improvements. It also denies, that when the partnership of Friend, Stephens and Williams is settled, the plaintiff would

have any right whatever in the subject of controversy, and that therefore the plaintiff is in no condition to attack the sale. It denies, that the effect of the deed of April 23, 1867, was to release the trust, under which the property was sold. It says, that at the time of said sale by the trustee the property was in a state of utter ruin and delapidation, and that it realized at the sale all that it was then worth ; that all the improvements, which had been placed upon the property, had been either removed or destroyed, and that nothing remained except the naked salt wells filled with debris, to clean out which cost respondent more than it would have cost to bore new wells ; that it had put improvements upon the property which cost $100,000.00 before the institution of plaintiff's suit, and before the respondent had any notice or knowledge, that the plaintiff or his intestate pretended to have any claim or interest in said property. It exhibits the two mortgages referred to in the second amended bill and avers, that it had authority to execute them.

McCulloch also answers the second amended bill and in his answer denies, that the consideration was inadequate in the then dilapidated condition of the property; and if it was inadequate, he insists that the sale could not be impeached for that reason, where the rights of innocent purchasers intervene.

The trustees in the first mortgage or deed-of-trust answered the bill, and in their answer show, that the bond-holders of said company were virtually interested in the property, and aver, that the bonds had been negotiated, and the proceeds thereof had been put upon the property in improvements. They aver, that at the time the said trust was executed to them, on the 1st day of October, 1866, they had no knowledge or notice of any claim or pretended claim of the plaintiff or his intestate in the property in controversy.

The deed-of-trust dated the 26th day of July, 1853, under which the sale was made, contains this provision : "And the said James H. Couch by and with the consent and agreement of the said W. J. Stephens, John Hall, and John McCulloch, the said parties secured by this trust, covenants and agrees to and with the said W. B. Robbins his heirs and personal representatives, that before any sale or sales of the land and other property by this deed conveyed or any part or parcel thereof

shall be had or made in pursuance of the provisions of this deed and the 6th section of chapter 117 of the Code of Virginia, notice of the time and place of such sale or sales shall be given by advertisement placed on the court-house door of said county of Mason at least four months before the day of such sale or sales, and by advertisement published in one of the papers printed at the time of such sale or sales in the city of Cincinnati, Ohio, once a week for four months previous to the date of such sale or sales, the editor's certificate to be taken and recorded as evidence thereof." The deed of the 23d of April, which, it is claimed by plaintiff's counsel, shows a complete payment of the debt, for which the property was sold, is as follows: "This indenture made the 23d day of April, 1857, between James H. Couch of the county of Mason and State of Virginia of the first part, and William J. Stephens of the second part, and John McCulloch, John Hall, Moses Michael and Henry J. Fisher assignee of said Moses Michael, of the county of Mason and State of Virginia of the third part: WHEREAS, The said William J. Stephens on the 16th day of December, 1850, in order to secure three notes amounting to the sum of $4,300.42, viz: to John McCulloch $1,525.82, to John Hall the like sum of $1,525.82 and to Moses Michael the sum of $1,291.66, each of said notes payable in three equal annual payments, all bearing interest from the 1st of September, 1850, the said W. J. Stephens did by indenture of trust dated on the 16th day of December, 1850, convey to said James H. Couch his heirs and assigns the following property," (describing it) "and whereas since the executing and delivery of the said deed of trust, the said William J. Stephens hath fully satisfied and paid off all the several sums therein secured, together with the interest thereon, to the said John McCulloch, John Hall, Moses Michael, and Henry J. Fisher, assignee of said Michael, which they do hereby acknowledge. Now this indenture witnesseth, that for and in consideration aforesaid, as well as for the further sum of $1.00 in hand paid by the said William J. Stephens to the said James H. Couch at or before the ensealing and delivery of these presents, the receipt of which is hereby acknowledged by the said James H. Couch, with the assent and approbation of the said John McCulloch, John Hall, Moses

Michael and H. J. Fisher have granted, bargained and sold, remised, released, and confirmed, and by these presents, do grant, bargain and sell, remise, release and confirm, unto the said William J. Stephens, all the estate, right, title, interest, claim and demand, both in law and in equity, that the said James H. Couch, John McCulloch, John Hall, Moses Michael and Henry J. Fisher, have or hold on the land above described, to have and to hold the said tracts or parcels of land to said W. J. Stephens, his heirs and assigns forever to the only proper use and benefit of the said W. J. Stephens, his heirs and assigns forever ; and the said James H. Couch, John McCulloch, John Hall, Moses Michael and Henry J. Fisher for themselves, and their heirs the above mentioned land, unto the said William J. Stephens, his heirs and assigns, in as free and ample manner as the same was warranted by the said William J. Stephens by the deed of trust above recited, do warrant the same to the said W. J. Stephens against the claim or claims of these, the said James H. Couch, John Hall, Moses Michael and Henry J. Fisher and all persons claiming, or to claim in, by, through, or under them, or either of them. In witness whereof," &c.

The deed is signed, sealed and acknowledged by all the parties.

There was no replication to the answer of the trustees in the first mortgage or deed of trust ; and no depositions were taken in the cause.

On the 17th day of April, 1877, the cause was heard, on proceedings theretofore had upon the plaintiff's amended bill, and second amended bill and exhibits filed therewith, upon the separate answers of John McCulloch, H. J. Fisher, James H. Couch, trustee, and the West Virginia Coal and Salt Co. to said bill, with general replication to each of said answers, and the joint answer of J. H. Walcott and Geo. W. Gerard, trustees, to said bills, which has heretofore been tendered, and is now ordered to be filed, and was argued by counsel. Upon consideration whereof the court is of opinion and doth decide, that the sale made by J. H. Couch, trustee, to C. B. Guthrie on the 9th day of January, 1865, of the property conveyed to him as such trustee by W. B. Robbins by the deed of trust of July 26th, 1853, set out in said amended bills is a legal, valid and

binding sale, and that the plaintiff is not entitled to the relief prayed for in his said bills;" and dismissed said amended bills with costs.

From this decree the plaintiff appealed, and insists by counsel that there is error therein to his prejudice.

It is argued, that the sale under said trust-deed should be set aside, because it sold for a grossly inadequate consideration.

Where a sale has been made under a trust-deed, and the grantee under the deed from the trustee has sold the land to an innocent purchaser for value, the sale will not be set aside, because the price, which the land brought at the sale, was grossly inadequate. Such practice would be in restraint on trade, and would tend to depreciate values to an alarming extent, and would render insecure titles to real estate. An innocent purchaser will be protected. Besides in this case it is charged in the second amended bill for the first time filed more than five years after the West Columbia Coal and Salt Company had purchased the land, that the sale was made for a grossly inadequate consideration, and this charge is denied in the answers, and the reason is given, why the price was not inadequate, and no proof of such inadequacy is furnished by the plaintiff.

It is also insisted that this [trustee had no right to sell, because the deed of April 23, 1857, acknowledges the payment to Hall of the debt, for which the land was sold, and conveys the land back to Stephens. I have set out that deed at length in this opinion, because the point was maintained with tenacity. The deed by Hall and McColloch does acknowledge the payment of the debt secured to them in the deed of trust executed by Stephens to Couch and Stribling, trustees, on the 16th of December, 1850, and the record clearly shows, that the said debt was by Stephens paid to them on the 26th day of July, 1853, when the deed of trust to Couch was executed, the deed under which the sale was made. But how was it paid? The evidence from the pleadings and exhibits is just as clear on this point. On the day when Stephens sold the property to W. B. Robbins and executed to him a deed therefor, the debts to McColloch and Hall were still unpaid. Robbins owed Stephens the purchase-money or the greater part thereof; and Stephens paid

the debts to McColloch and Hall by giving them Robbins's bonds therefor, which bonds included the principal and interest of said debts up to that time; and Robbins secured the payment of these bonds by a deed of trust that day executed to James H. Couch, trustee. The deed of trust of December 16, 1850, ought that day to have been released; but it was not done, and the release was made by Couch, McColloch and Hall by the said deed of April 23, 1857. This deed amounts to an acknowledgment of the payment of the debts secured by the trust-deed of 1850, and to a release of that deed, nothing more. It is not an acknowledgment of the payment of the debt Robbins owed, or a release of the trust executed by him to Couch, trustee, on the 26th of July, 1853.

If it is agreed between the parties that a note of a third person may be taken for a debt, and such note is so given and received, it will be a payment of the debt. If a note is secured by a deed of trust, and the grantor in said trust convey the property, on which said trust is given, to a third party, and that third party by agreement of the debtor and creditor gives his note to the creditor for the debt and interest and executes a deed of trust to secure such new note, it is a payment of the old debt, and the first deed of trust is discharged, and if in the release or quitclaim-deed by the creditor of the first deed of trust he acknowledges the payment of the debt so secured in the first deed of trust, this will not be an acknowledgment of the payment of the debt in the second trust secured, or a release of said trust. All the interest McCulloch had in the title under the first deed of trust he conveyed to Stephens, who had paid the debt by Robbins's note, but he did not relieve Robbins from the second trust, which was executed by said Robbins.

It is also insisted, that Friend was within the Confederate lines when the sale was made in January, 1865, and therefore he could not have paid McCulloch's debt and so prevented the sale of the property, and that under such circumstances the sale was illegal. It is not clear that Friend was so entitled to notice of the sale, as to bring him within the rule laid down in Dean v. Nelson, 10 Wall. 172, if he was within the Confederate lines at the time of the sale; but this Court has

repeatedly held, that it would take judicial notice of the times when any of the Counties of this State were under the control of the Confederate government. The second amended bill shows, that Friend resided in the county of Kanawha; and this court will take judicial notice, that the county of Kanawha in January, 1865, and for a long time before was under the jurisdiction of West Virginia, and within the lines of the Federal army.

It is also insisted, that the sale is void, because the trustee did not advertise it as required by the trust-deed. The bill charges, that the property was not advertised as provided in the trust, but does not charge in what the failure consisted, whether there was entire failure to advertise, or whether the advertisement was defective. The trustee and cestui que trust, McCulloch, both deny the charge. The trustee says, that everything was done in regard to the sale, that was required by the trust. There are no depositions; and the advertisement of the sale is not filed with the answer of the trustee or otherwise. The deed of the purchaser recites, that the property was advertised as required by the trust-deed.

In the case of Gibson's heirs v. Jones et als., 5 Leigh 370, it appears, that a bill was filed to set aside a deed from the trustee to the purchaser under the trust-sale. The deed was made on the 23d of January, 1813; and the bill was filed promptly in February, 1813. The bill alleged, that " the sale was made without due advertisement thereof according to the provisions of the deed of trust of June, 1811; that it was a forced sale; and that thus the property was sacrificed." The trustees were not before the court, and although they were made parties, they did not answer. The chancellor " being of opinion, that, for aught that appeared, there was no reasonable objection to the trustee's sale of the land, since it appeared by their deed of conveyance to Joel Jones, the purchaser, that they had proceeded in the sale agreeably to the provisions of the deed of trust, under which they acted," &c., dismissed the bill. The Court of Appeals reversed the decree, because the trustees were not before the court. Tucker, President, in delivering the opinion of the court said : " The bill charges the sale to have been irregularly made, and without advertisement, by which a great sacrifice was produced.

The answer does not allege, that there was an advertisement; the defendant took it for granted the proceedings were regular. It became him to prove, that they were so. The proof lay upon him; for he had the affirmative of the issue on this point. The plaintiff could not prove there was no advertisement. They made an effort to do it by making the trustees parties; but their bill was dismissed without the trustees having ever been brought before the court."

This decision we approve; but we cannot assent to the broad doctrine stated by Judge Tucker in his *dictum*, that in every case and at any time all a party, who is interested to have a deed from a trustee cancelled, must do is to file his bill and charge, that the sale was not advertised according to the provisions of the trust-deed; and that when the defendant trustee answers denying this charge in the bill, and there is no other proof in the case on the point, the deed must be cancelled. If this is true, many land-titles hang by a very slender thread indeed. If the *dictum* of Judge Tucker is law, the decree of the circuit court would have to be reversed. The counsel for appellant rely upon this case; and no authority is cited for the appellee and the point is not noticed by him.

I have been unable to find any authority that sustains the *dictum* of Judge Tucker, except the case of *Norman* v. *Hill,* decided by the Special Court of Appeals, 2 Patt. & H. 676, in which case the court founds its opinion on the *dictum* of Judge Tucker, and regards it as a decision of the question binding upon them; and I have found no case precisely in point holding adversely thereto. In the case of *King* v. *Inhabitants of Whiston,* 4 Ad. & E. 607, it was held, that under stat. 56 G. III ch. 139 §§ 1, 2, where an apprentice is bound from one parish into another, the indenture is not valid for the purpose of settlement, unless notice has been given to the overseers of the latter parish pursuant to sect. 2, before the indenture was allowed; but on appeal from an order of removal grounded on such indenture the respondents are not bound in the first instance to prove such notice; if there be no evidence to the contrary, the notice will be presumed. In *Thayer* v. *Barney,* 12 Minn. 502, it was held, that a lost receipt is presumed to have been stamped in the absence of

anything showing it was not stamped. To same effect is *Smith* v. *Jordan et al.*, 13 Minn. 271. In *O'Hara* v. *Blood*, 27 La. An. 57, it appeared, that the defendant was sued for the payment of a certain sum in consequence of the construction of banquettes in front of his property on Locust street; and he averred, that the city of New Orleans had not complied with the formalities set forth in the city charter in this, that one fourth of the owners of real property fronting on said unbanquetted street did not petition for the banquetting alleged to have been done in that locality. It was held, that a petition signed by a number of persons representing themselves as property-holders on Locust street asking for banquetts to be constructed on that street being found in the record, it must be supposed in the absence of rebutting evidence on the principle of *omnia presumuntur rite esse acta*, that the persons petitioning constitute one fourth of the property owners on said street.

In *Banks et al.* v. *Bales*, 16 Ind. 423 it was held, that the statute requires, that no more land shall be sold by the sheriff, than is necessary to satisfy the execution, unless the same is not susceptible of division ; and a duty is thus imposed upon him, which he may not omit. In the absence of contrary proof however it will be presumed, that he discharged his duty in this respect.

In *Drake* v. *Mooney*, 31 Vt. 617 it was held, that one, who claims title to property by virtue of a sale on execution, may show, that the sale was made in a different manner from that stated in the officer's return on the execution ; that where the return of an officer of the levy of an execution and of the sale of personal property thereunder stated, that "he advertised the property as the law directs," and then proceeded to state the places, where it was to be sold and was sold, the court would presume, that the property was advertised at the same places, where it was sold ; and the return was held sufficient.

In *Wood* v. *Terry*, 4 Lansing 80 it was held, that where lands mortgaged to the commissioners for levying the United States deposit-fund are sold by them on default of the mortgager, it will be presumed in favor of a purchaser at the sale against one claiming to assert a right of redemption under the mortgage, that the steps required by the statute have been

taken in due form by the commissioners, that the notice required by section 31 has been given at the proper time, and that both commissioners were present at the sale, &c.

The deed in the case at bar not only required the notice of the sale to be advertised in a Cincinnati paper for four months, but also required, that notice should be posted at the front door of the court-house of Mason county for a like period. There is no law requiring such evidence to be preserved, and the notice posted on the door of the court-house might be lost, or the fact, that it had been so posted there and the contents of said notice might soon be forgotten. What would be required in a suit promptly brought after the sale to be proved as to the proper advertisement of the property, we will not decide in this case, although my own opinion is, that the execution of the deed to the purchaser by the trustee is *prima facie* evidence, that all the steps necessary for the trustee to take, in order to give him the right to make the deed, had been taken, and that this presumption would be conclusive, unless rebutted by other facts and circumstances in the case. Why should a *cestui que trust* in the deed permit his agent to make the sale and without showing *mala fides* on the part of the agent be permitted to set aside the sale, unless the agent first showed, that he had not sold contrary to law? But we are prepared to say, that in a case like this, where the party, who claims to be injured by a sale under a deed of trust, waits for nearly four years, before he files his bill to have it set aside, and in his bill charges, that the sale of the property was not advertised as required by the trust-deed, and this charge is denied by the answer of the trustee, and there is no proof as to the advertisement, and the rights of third parties have intervened, who for five years after the sale are not brought before the court, the *prima facie* presumption is, that the sale was advertised according to the requirements of the trust-deed, which presumption is conclusive in the absence of proof to the contrary. If this were not true there would be no safety in purchasing property which had been sold under a deed of trust. And if the purchaser under the trust-deed had sold and conveyed the property to a third party without knowledge of any defect in the advertisement, it might be too late for any party to question the validity of the deed and

sale because of any such defect in the advertisement. But that question is not decided now.

But it is said, that the deed of trust as a condition precedent to the sale required the certificate of the advertisement in the newspaper to be *recorded.* If the word "recorded" was in the original deed, it was not a condition precedent to the sale, that the certificate should be recorded, it was merely directory. *Wood* v. *Terry*, 4 Lansing 80. But to my mind it is clear, that the word "recorded" was "received" in the original deed, which was lost, and by a clerical error of the recorder, it was written "recorded."

It is also insisted, that the trustee ought not to have sold the property without first having resorted to a court of equity to have a cloud upon the title removed, the trustee, Stribling, in the deed of trust of 1850 not having released that deed of trust. This was not such a cloud upon the title as existed in *Rosset* v. *Fisher*, 11 Gratt. 492. It was only necessary to examine the recorded deed of April 23, 1857 to see, that the deed of trust of 1850 was no longer a lien on the land. In *Jones* v. *Tatum*, 19 Gratt. 720, the *quære* is propounded: "Whether under the Virginia statute of uses, the trust having ended, the legal title was in the trustees?" In that case it was held, that if it was, and they should have been made parties, the sale having been made and confirmed, and the purchaser being in quiet possession, the deed of release of the surviving trustee cured the defect. In this case there was no such defect in the title, as would have required the trustee to resort to a court of equity to have it cured before proceeding to execute the trust.

For the foregoing reasons the decree of the circuit court of Mason county is affirmed with costs and $30.00 damages.

JUDGES GREEN AND HAYMOND CONCURRED.

DECREE AFFIRMED.