McG. MANNING v. ELLIOTT BROS. AND J. P. ELLIOTT, Trustee.

## Usury—Mortgage—Notice of Sale.

1. Where a mortgagor brings an action to restrain the mortgagee from selling the mortgaged property, on the ground that the debt secured is usurious, an injunction will be refused, if the mortgagee waives the usurious parts of the contract.

2. Where a debtor comes into a court of equity, and asks relief against an usurious contract, he must pay the defendant the money justly due him, with lawful interest thereon. This rule, however, does not apply when a creditor comes into court asking the enforcement of an usurious claim.

3. Where an action is brought to enjoin a sale under a power of sale contained in a mortgage, the court having acquired jurisdiction of the parties and the subject-matter, may direct a sale of the land; and is not bound to direct such sale in strict accordance with the terms contained in the deed.

4. Where in such case a mortgage provided, that the mortgagee should have the right to advertise at once upon failure to pay the amount due, the court properly allowed the mortgagor sixty days within which to pay the debt, before advertisement for the sale.

5. In the absence of express stipulations in the mortgage, a mortgagor is not entitled to notice of the intention of the mortgagee to foreclose.

(*Bridges* v. *Morris*, 90 N. C., 32, cited and approved. *Capehart* v. *Biggs*, 77 N. C., 261, overruled on one point).

MOTION to continue a restraining order until the hearing, made before *Shepherd, Judge,* at Spring Term, 1884, of PITT Superior Court.

The plaintiff alleged in his complaint, that on January 17th, 1883, he borrowed of the defendants the sum of $2,000, and executed to them a bond signed by himself and his wife, payable on the 1st day of December, 1883, with interest at six per cent. That to secure the payment of this bond, plaintiff and his wife executed a mortgage to J. P. Elliott, as trustee, on his farm in Pitt county. That as part of the consideration for the loan, the defendants (who were commission merchants) required the plaintiff to ship them for sale 100 bales of cotton, or in lieu thereof should pay them during the year 1883, $150. He further alleged, that in pursuance of this contract, during the year 1883,

he shipped six bales of cotton to the defendant, but had declined to ship any more, because the returns of sales made to him by the defendants were wrong and unjust, and that on November 29th, 1883, he had paid the defendants the sum of $100 in cash; but that no part thereof, nor of the proceeds of the sales of cotton had been applied to the mortgage debt, but that these sums had been applied to the payment of the $150—and of an additional charge of $2\frac{1}{2}$ per cent. for the loan of the money. He further alleged, that on account of the said $2\frac{1}{2}$ per cent., and sum of $150, which were in addition to the legal interest, the contract between him and the defendants was usurious and illegal. The relief asked was, that the defendants be restrained from proceeding under the mortgage, and that the contract of January 17th, 1883, be declared usurious.

The defendants, in their answer, say that they are commission merchants in the city of Baltimore, and only loan money to those persons who deal with them, and upon an understanding that the loans so made should be considered as allowances, upon which a commission of $2\frac{1}{2}$ per cent. should be paid, and that the person to whom loans were made should ship cotton to them for sale at the rate of five bales for each $100 loaned, or otherwise should pay the legitimate commission thereon which they would have received if such cotton had been actually shipped. The defendants further say that the $100 has been credited on the bond of January 17th, 1883, and that the proceeds of the cotton have been paid to the plaintiff by paying his drafts on them for the full amount of such proceeds.

It was admitted by the plaintiff's counsel that the plaintiff had drawn upon the defendant at the time of the shipment of the cotton, and it was further admitted that, after giving the plaintiff every credit he claimed for said cotton on account of unfair returns, the amount in controversy would not exceed $25.

The defendants agreed to surrender all claim against the plaintiff for failure to ship the cotton to them.

4

The mortgage provided that in case of failure to pay the bond at maturity the trustee might at once advertise for 30 days, and sell said land for cash, or on credit, as he might think best. It contained no provision for any notice to the mortgagor before advertising.

Upon these facts, His Honor refused to continue the restraining order to the hearing, and adjudged, further, that unless the plaintiff pay the sum of $2,000, with interest at 6 per cent., less the $100 paid November 28th, 1883, and less the $25 in controversy, into court within sixty days from the date of the order, then the trustee mentioned in the mortgage shall proceed to sell the mortgaged lands according to the terms of the said mortgage.

From this judgment the plaintiff appealed.

No counsel for plaintiff.
*Messrs. Haywood & Haywood*, for the defendants.

MERRIMON, J.   We cannot hesitate to affirm the judgment of the court below.   It manifestly granted all that the plaintiff could in conscience ask, and, perhaps, more than in strictness he was entitled to have.

If it be granted that the several things agreed to be done were all essential parts of the same contract, as alleged in the complaint, (and this is by no means certain), and that the contract was in any aspect of it usurious, nevertheless, every usurious feature of it was abandoned and surrendered by the defendants, and the court simply allowed them the money due them and the lawful interest thereon.

The plaintiff, a debtor comes into court, asking equitable relief, and this the court will grant to the extent he shows himself entitled; but, in doing so, it will compel him to do equity in respect of the matter in controversy towards the party against whom he seeks relief; he must pay the defendants the money justly due them, and they are entitled to the full benefit of the security for it provided in the deed of trust mentioned in the

pleadings. A just maxim of equity is, that he who seeks equity must do equity, and applying this rule, a court of equity will not set aside a contract or transaction in an action brought by the borrower of money for that purpose, unless upon the terms and requirements that he will pay the lender the sum of money that is *bona fide* due him. This rule, however, does not apply to the case of a lender of money who comes into court asking the enforcement of his usurious claim; he would encounter another maxim, which requires him who would sue in a court of equity to come with clean hands.

The court, having by this action acquired jurisdiction of the parties to the deed of trust, the deed itself and the property conveyed by it, had power to direct a sale of the property specified in the deed, and to make all proper orders and decrees to that end.

It was not bound to direct a sale of the property in strict accordance with the terms prescribed in the deed; in this respect, it ought to exercise a sound discretion, having due regard, under the circumstances of the case, for the rights of the debtor and the creditors respectively.

Hence, the court properly provided in its judgment, that the plaintiff might, within a reasonable time, sixty days in this case, pay the money due from him to the defendants into court, and if he failed to do so, then, that the trustee named in the deed should sell the property according to its terms. We see nothing unreasonable or unjust in the judgment, towards the plaintiff. The cause is retained for further orders. If the money shall be paid as required, proper orders and decrees discharging the debt and property will be entered at the next or subsequent term of the court; if the property shall be sold, like orders and decrees in respect to passing the title to the purchaser, and disposing of the money, the proceeds of the sale, will be made.

It is scarcely necessary to remark upon the plaintiff's claim set forth in the complaint, that he had the right to have notice of the defendants' purpose to advertise and sell the property

before they did so, because the bringing of this action and what has been done in it, has obviated all question in that respect. Lest, however, it may be supposed that we passed it by unnoticed, we will add, that the plaintiff was not entitled to notice to pay the debt mentioned in the deed of trust before advertisement of the property for sale by the trustee.  Such notice was not provided for in the deed; it was expressly provided that in default of payment of the debt as provided, the trustee should sell the property and apply the money, the proceeds of the sale, as therein directed.  In the absence of any express stipulation to that effect, there is nothing in the deed, or its nature, or the character or circumstances of the debt, that implied a right to such notice; nor is there any rule of law or equity that gives such right, and for the plain reason, that the parties to the deed agreed in terms that in the contingency provided for, the trustee might sell the property.  The plaintiff thus obliged himself to take notice of the time of payment and his default in failing to pay, and the defendant's right to sell consequent thereupon.

The parties had the right to make such agreement, and when made in good faith and in the absence of fraud or some inequitable cause, the contract must operate according to its legal effect. All persons competent to contract may make such lawful contracts as they see fit to make, unrestrained by courts of justice, either in the making or enforcement of them.

A court of equity cannot make a contract for parties, nor has it the power to modify or defeat one when made, if it be valid. The office and purpose of such a court is to enforce such contract, stripped of fraud, oppression, mistake or undue advantage, or like defect or objection, and according to the true intent and meaning of the parties to it.

Courts of equity in some cases nullify or set aside contracts for causes that render them void or voidable; they, in other cases, uphold contracts accordingly as the parties really make them, without regard to forms or imperfection, and require, as nearly as may be, each party to do exact justice to the other.

We are not unmindful of what was said in *Capehart* v. *Biggs,* 77 N. C. R. 261, in respect to notice to the debtor of advertisement and sale of property conveyed to a trustee with power of sale to pay debts. With great respect for the opinion of the eminent Judge who delivered the opinion in that case, we are very sure that the rule as to notice in such cases, as laid down by him, has only what he there said to support it, and it must in our judgment, apply to that case alone. We reiterate what was said in *Bridgers* v. *Morris,* 90 N. C. R. 32, in respect to the case above cited.

The judgment must be affirmed. Let this opinion be certified according to law.

No errror. 　　　　　　　　　　　　　　　Affirmed.