## CHARLESTON.

ATKINSON v. WASHINGTON AND JEFFERSON COLLEGE.

Submitted June 18, 1903—Decided November 14, 1903.

1. CONTRACT OF SALE—*Trustees—Purchase.r.*

A contract of sale between a trustee in a deed of trust and a purchaser is complete, when the trustee, selling at auction, knocks the land down to the bidder, makes a memorandum of the sale and its terms and signs the same. (p. 39).

2. CONTRACT OF SALE—*Statute of Frauds.*

When a plaintiff, seeking to avoid such sale, admits in his bill that it was made but does not set up the statute of frauds nor claim the benefit thereof, he is taken to have admitted an agreement which is either good under the statute, or otherwise binding upon him, and the contract will be held good, although it does not appear that such memorandum was made and signed. (p. 39).

3. NOTICE—*Trustee's Sale.*

When the purchaser at such sale is not the trust creditor, nor a person in any way connected with the deed of trust except by his act of purchase, nor in any way chargeable with responsibility for the regularity of the proceedings of the trustee, nor having power of control over them, nor affected with any notice of irregularities, the burden is upon the party attempting to set the sale aside, on the ground of want of due advertisement, to show failure of advertisement, defects in the notice, want of sufficient publication or service or posting thereof. (p. 42).

4. NOTICE—*Trustee's Sale.*

Where the deed of trust provides that notice of sale under it may be given by advertisement, "published thirty days previous thereto in some newspaper" etc., publication in such newspaper once a week during such period of thirty days is suffcient. (p. 44).

5. NOTICE—*Sale.*

Failure to serve the notice upon the non-resident attorney in fact of the debtor will not invalidate the sale made by the trustee, although such attorney may have been domiciled in the county. (p. 45).

6. PROCESS.

In the law of process and service thereof, the term resident is generally synonymous with inhabitant. (p. 47).

7. TRUSTEE'S SALE—*Notice.*

Under the statute relating to sales under deeds of trust, a purchaser of the property upon which the trust deed is, or a subsequent incumbrancer thereof, is not entitled to personal service of the notice of such sale. (p. 48).

8. TRUSTEE'S SALE—*Notice.*

A sale made by a trustee will not be set aside on the ground of failure to post the notice of sale at the front door of the court house, when such failure is denied, unless there is proof thereof, the burden being upon the plaintiff to establish such irregularity. (p. 50).

9. TRUSTEE'S SALE.

A sale made by a trustee will not be set aside because of his failure to make the report required by section 3 of chapter 87 of the Code.    (p. 50).

10. TRUSTEE'S SALE—*Notice.*

Where a trustee has sold property under a notice specifying the terms of the sale to be cash, and afterwards, with the consent of the creditor who is entitled to receive the purchase money, allows the purchaser time in which to pay a portion of the purchase money, receiving notes therefor and the residue in cash, without any prior agreement or understanding between the trustee and purchaser that there should be an allowance of credit as to any portion of the purchase money, such departure from the contract of purchase does not invalidate the sale.    (p. 51).

11. TRUSTEE'S SALE.

When a deed of trust provides that any sale of the property made by virtue thereof may be for cash or on credit, or partly for cash and partly on credit, and does not stipulate for personal notice of the sale to any person not provided for as to such notice in the statute, the conduct of the trustee, in selling for cash and failing to have the notice of sale served upon a lienor holding a subsequent deed of trust on the property or claiming the land as a purchaser at a sale made under such subsequent deed of trust, is not fraudulent, inequitable, or illegal and affords no grounds for setting aside the sale. (p. 51).

12. TRUSTEE'S SALE—*Fraud.*

Such sale will not be set aside on the ground of inadequacy of price, at the instance of such holder of a subsequent deed of trust, or purchaser at a sale made thereunder, when his bill is unaccompanied by any offer to pay a larger price for the land than that for which it sold, and bond or other guaranty that such higher price will be paid on a resale and the evidence as to the value of the land does not clearly show that the price for which it sold is so inadequate as to shock the conscience and indicate that a fraud has been perpetrated upon the rights of the party complaining.    (p. 53).

13. TRUSTEE'S SALE.

One who complains of such a sale is not entitled to more favorable treatment in a court of equity than a person who complains of an unconfirmed judicial sale.    (p. 53).

Appeal from Circuit Court, Hancock County.

Action by John Atkinson against Washington and Jefferson College *et al.* Judgment for defendant, and plaintiff appeals.

*Affirmed.*

JOHN R. DONEHOO, for appellant.

H. M. RUSSELL and C. L. CRAMER, for appellees.

POFFENBARGER, JUDGE:

John H. Atkinson, the appellant, held a lien by deed of trust upon the property of the American Fire Clay Company in Hancock County, for a debt amounting to something over six thousand dollars, prior to which another lien on the same property was held by a Mrs. Donaldson for something over two thousand dollars, and, to enable his debtor to borrow ten thousand dollars from the Washington and Jefferson College, a Pennsylvania corporation, with which to pay, among other things, the debt due Mrs. Donaldson, he released his lien in the year 1890; and the Washington and Jefferson College loaned the Fire Clay Company ten thousand dollars and took a deed of trust on the property, executed to G. L. Cranmer, Trustee, bearing date July 28, 1890, and afterwards, said Fire Clay Company executed its note to said Atkinson for the sum of $6.824.00, and a deed of trust upon the same property to secure the payment thereof, in which Albert Haigh was made trustee.

Both debts being unpaid, as well as a large amount of other indebtedness due from said company to other parties, Cranmer, Trustee, at the instance of the college, and after due advertisement according to the terms of the deed of trust, as is claimed, sold the property on the 25th day of November, 1898, for $12,910.00, announcing that James M. Porter was the purchaser.

At January Rules, 1899, Atkinson filed his bill in equity against the college, Cranmer, Trustee, the American Fire Clay Company, Albert Haigh, Trustee, Hugh L. Irwin, Trustee, and James M. Porter, setting up all of the foregoing facts and, in addition thereto, that there was a third lien by deed of trust on the property, in which said Irwin was trustee in favor of numerous creditors for amounts aggregating about twenty-two thousand dollars, and alleging the invalidity of said sale on the ground of irregularities and alleged defects in the notice of sale

and service thereof, illegal and inequitable conduct on the part of the trustee in selling for cash under the peculiar circumstances existing, inadequacy of price, and failure on the part of the college to give a credit of three hundred dollars on its debt. He further alleged that Porter had been put into possession of the property and was receiving the rents and profits thereof, but whether said sale had been fully consummated by the payment of the purchase price and the execution of the deed, plaintiff was uninformed, but he alleged that, at the time of the commencement of his suit, no deed to the purchaser had been recorded.

Later, it was ascertained by Atkinson that Porter had purchased for himself and John A. Campbell, and that instead of paying all the purchase money in cash according to the terms of sale specified in the notice, they had paid five thousand dollars in cash and given their notes for the residue. Thereupon he filed an amended bill setting up these facts and alleging considerable additional matter against the validity of the sale. Said amended bill is not in the record. The clerk certifies that it is not in the file of papers in the cause and cannot be found. The substance of it, however, may be gathered from the demurrers and answers filed, and is admitted in the briefs of counsel on both sides, and no exception is taken on the ground of its absence from the record.

Among other things, it is shown that in 1896, Albert Haigh, Trustee, made a sale under plaintiff's deed of trust at which plaintiff became the purchaser at the price of fifteen thousand dollars, and it seems to have been alleged in that connection that the college consented to said sale, and agreed that the proceeds thereof should be applied to the satisfaction of its lien, which alleged agreement and connection with the sale on the part of the college is denied. Later, a suit was brought by a creditor of the American Fire Clay Company and its other creditors to enforce a judgment lien, and it appears to have been alleged, in that connection, that the bill therein attacked the said sale made by Haigh, and that a decree was finally entered affirming the validity of the sale and thereby affected, by way of an adjudication against it, the lien of said college. But this allegation is denied and it is averred that no finding was made by the decree respecting the validity of the sale, and

that. lest the decree might, by inference, be taken to have decided any matters between the plaintiff and the college, the court added a provision that it was not intended to affect any of their rights legally or equitably. Nothing is said about these matters in the brief of counsel for appellant, and, evidently, they have been abandoned. The argument in the briefs proceeds upon the admission of a valid lien held by the Washington and Jefferson College and merely attacks the sale as an uncompleted one, and as one which ought not to be completed because of the irregularities and defects in the proceedings on the part of the trustee, and alleged inequitable conduct on his part in proceeding as he did. No deed has been executed to the purchasers, and the reason given for this as well as for the failure to pay all the purchase money in cash, by the appellees in their answers, is the institution of this suit. The purchasers say they were ready, and have ever since been ready, to pay the entire amount of the purchase money upon receiving a deed for the property, and are informed and believe that the deed would have been executed and delivered to them by the trustee but for the bringing by the plaintiff of this suit, and that the pendency of this suit has since interfered with the closing of the transaction.

The purchase money not having been paid according to the terms set forth in the notice to sell, and no deed having as yet been made, counsel differ widely in their views concerning the nature of the sale and transaction and the rights of the parties thereto, as determined by the nature of the sale; it being insisted on the part of counsel for the appellees that there is a complete contract of sale binding the trustee to convey the title and the purchasers to accept the same and pay the purchase money, in consequence of which the purchasers are entitled to the presumption in favor of the regularity of the proceedings, which obtains in the case of a complete and confirmed judicial sale. On the other hand, it is claimed for the appellants that the sale has been arrested and stopped before completion, in consequence of which, there is no presumption in favor of its validity, and that it stands in a position closely analogous to that of an unconfirmed judicial sale, liable to be set aside by the court for irregularity, with the burden resting upon the purchasers of proving the regularity and validity of

the sale in the assertion of their demand for a conveyance of the title.

The rule announced in *Gibson's heirs* v. *Jones,* 5 Leigh 370, in reference to a completed sale under a deed of trust, is that where it is impeached by an heir of the deceased debtor, on the ground that the trustees did not make due advertisement of the sale in pursuance of the deed of trust, the sale is irregular, if the advertisement was not so made, and that the burden of proof of such advertisement rests upon the parties claiming under the deed. That rule has probably been discarded in this state. It is now held that where a trustee has made a sale and conveyed the land to a purchaser who has recorded his deed, and a suit is brought by the grantor to set it aside, because the land was not advertised in the manner specified in the deed of trust, the burden of proving the allegation is on the plaintiff, and that it will be presumed, after the making of the deed and recordation thereof, that the land was properly advertised. *Burke & Keatly* v. *Adams,* 23 W. Va. 139; *Lallance* v. *Fisher,* 29 W. Va. 512; *Fulton* v. *Johnson,* 24 W. Va. 945; *Dryden* v. *Stephens,* 19 W. Va. 1. An examination of the decisions of this Court fails to disclose any case in which the aid of a court of equity has been sought by the debtor, or an interested creditor, in arresting the execution of the deed, after the sale has progressed so far as the acceptance of a bid by the trustee, after crying the sale pursuant to advertisement, at the time and place fixed for sale, and payment of part of the purchase money by the purchaser. There is, therefore, no precedent to be followed in this case and the conclusion must be determined by the general principles of equity cases involving sales by trustees under deeds of trust. There are many cases in which sales have been enjoined upon the application of the grantor in the deed of trust, showing equitable grounds, such as the misconduct of the trustee, want of notice, a defect in the notice, usuary in the debt secured, or disputed claims as to credits upon the debt, but the bills have been filed and the injunction granted before the date of sale. In some cases, sales have been set aside even after the execution of the deed upon equitable grounds. *Rossett* v. *Fisher,* 11 Grat. 492.

The nature of the contract between the trustee and the purchaser has been determined by this Court in the case of *Fleming*

v. *Holt,* 12 W. Va. 143, where JUDGE GREEN, delivering the opinion of the court, said: "A sale by a trustee, like a sale by a commissioner, is without warranty; but there is this obvious difference between the two; the contract of purchase at a sale by the commissioner is incomplete, till his bid is accepted by the court, who is the real seller of the property, the commissioner of sale being the mere agent of the court. The bid is accepted by the court by the confirmation of the sale; after that, though the purchaser before the deed is made to him, finds out that the title to the land is defective, he is nevertheless bound to receive it, and pay the purchase money. In a sale by a trustee, the court does not accept the bid of the purchaser, but it is accepted by the auctioneer, when he knocks the land down, and on the making by him of a memorandum of the sale and its terms, signed by the auctioneer, the contract for the sale is as complete as the contract for the sale made by a commissioner is when the court accepts the bid by confirming the sale. After such knocking down of the land by the auctioneer and the making of such memorandum, the purchaser must accept the deed and pay the purchase money, though he does find the title defective. He must if he wishes to do so, investigate the title in this case, as in the other, while the contract is incomplete, that is in the last case, before land is knocked down to him."

This view seems to accord with the general tendency of the authorities. Auction sales, except those made under decrees of courts of chancery, are generally held to be within the statute of frauds requiring a memorandum in writing to make them valid. "It was at one time thought that by reason of their publicity, sales of land or goods at auction did not come within the statute; but, whatever may formerly have been the rule, it is now well settled that such sales not only come within the letter, but also within the spirit of the statute. And no exceptions are made in this respect, except in favor of what are strictly judicial sales. That is, sales made under an order or decree of a court of chancery, or subject to its confirmation and control." Wood on Stat. Frauds, page 457. Some of the courts view sales by trustees, administrators and other persons, standing in a representative relation as *quasi* judicial sales, requiring no memorandum, and Browne on the Statute of Frauds

at section 264, says there are differences of opinion and decision, turning upon the fact of their being regarded, or not, as *quasi* judicial sales. But the more lengthy discussion of the subject found in Wood on the Statute of Frauds indicates that by the weight of authority such sales are within the statutes. Whether this sale is or is not within it, is immaterial except in so far as it bears upon the nature of the contract, the statute not having been pleaded here, and the plaintiff admitting that a sale was made. *Fleming* v. *Holt,* 12 W. Va. 143; *Barrett* v. *McAllister,* 33 W. Va. 738.

The acceptance of the bid and the making of a memorandum thereof by the trustee being a complete contract of sale, binding the purchaser to accept the bid and pay the purchase money, must he, in seeking the enforcement of that contract, show that the trustee has proceeded regularly in making the sale? The contract does not confer title upon him. He obtains that by the deed. It confers only the right to call for the legal title, to enforce a specific performance of the contract of sale. If, at this juncture, the grantor in the deed of trust, or a subsequent deed of trust lienor having an interest in the property, an incumbrance upon the equity or redemption, in a sense standing in the shoes of the grantor, interposes and denies that the trustee has proceeded regularly, invokes the aid of a court of equity to restrain the trustee from passing the title to his prejudice, when he is not bound to do so by any valid contract. is the burden of proof upon the purchaser to show that the proceedings of the trustee have been regular, or is it upon the grantor to show that they have not been regular? It is elementary law. that he who sets up a contract of sale and prays specific performance of it must establish that contract by proof. On the other hand, in the case put, the grantor in a deed of trust files his bill asserting an equity and praying relief. Ordinarily, he who does that, must not only allege, but prove, his equity in order to obtain relief. In the absence of any presumption in favor of the regularity of the proceedings of the trustee, the burden seems to be upon the purchaser; if there is such presumption, then upon the grantor.

Whether there is or not, was not decided in *Dryden* v. *Stephens,* not perhaps in any other case. Nor was the exact question discussed. But JUDGE JOHNSON did use the following

language, bearing strongly upon it: "What would be required in a suit promptly brought after the sale to be proved as to the proper advertisement of the property, we will not decide in this case, although my own opinion is, that the execution of the deed to the purchaser by the trustee is *prima facie* evidence, that all the steps necessary for the trustee to take, in order to give him the right to make the deed, had been taken, and that this presumption would be conclusive, unless rebutted by other facts and circumstances in the case. Why should a *cestui que trust* in the deed permit his agent to make the sale and without showing *mala fides* on the part of the agent be permitted to set aside the sale, unless the agent first showed, that he had not sold contrary to law?"

As has been seen, the rule announced in *Gibson's heirs* v. *Jones*, 5 Leigh 370, denying the existence of any presumption in favor of the purchaser, on the question of due advertisement of the sale, has been modified by this Court. Whether the court would have gone further had the aid of equity been invoked before the deed was made and held that, in that state of the case, the purchaser should have the benefit of a presumption, it is impossible to say. Evidently, the court was reluctant to overrule a decision based upon the reasoning of so eminent an authority as Judge Tucker, but it felt itself bound to do so, because of the widespread disaster to land titles which would have resulted from adhering to it. However, JUDGE JOHNSON, does not hesitate to say that the rulings made upon the notice was not necessary to the decision of the case, and that the *dictum* was wholly unsupported by authority. And he proceeds to show by the citation of numerous cases that the position does not accord with the rule announced by the courts. See pages 15 to 17. The peculiar circumstances of that case warranted the interposition of equity upon grounds other than want of due advertisement. The deed of trust under which sale was made was given by Mrs. Gibson in January, 1811. She died in October, 1811. In June, 1813, part of the land was sold and the trust creditor bought it. The suit was brought by the heirs of Mrs. Gibson, who alleged that the debt was practically paid off, and claimed the benefit of large credits. The purchase was not made there, as here, by a stranger to the deed of trust, but by the very party at whose instance the sale

had been made, the *cestui pue trust,* between whom and the trustees and the heirs there was close relation, and between whom it was competent for a court of equity to do justice without the risk of injury to any third party. As the creditor himself had bought the land, sold by the trustee as his agent, of whose acts and proceedings he might well be supposed to be cognizant, the ruling that the burden was upon him to show that his purchase was regular in all respects may stand upon sound reason, but the reasoning upon which it is based is not necessarily applicable to a case in which the purchaser is a third party, sustaining no relation of confidence or privity toward the trustee or the debtor, but dealing at arm's length with the trustee, and having no notice of irregularity on his part. To hold, therefore, in a case like this that the burden is upon the grantor to show want of notice in no way impugns the soundness of the decision in *Gibson's heirs* v. *Jones.*

The view that an innocent purchaser is entitled to the benefit of a presumption in favor of his title, which the grantor must rebut, is supported by *Marshall* v. *Stephens,* 8 Humph. Tenn. 159, 174, where the court says: "We hold it to be a sound principle, supported by both justice and reason, that when there is a power of appointment, which has been exercised, and there be a legal, and an illegal mode of exercising it, and the proof leaves it doubtful which has been used, the legal presumption in favor of innocent purchasers, or meritorious claimants is, that it has been the legal one." This accords with the general principle of law. A plaintiff in an equity suit must state in his bill grounds for relief and prove them as stated. One complaining of a decree of a judgment must bear the burden of affirmatively showing error. It may be said that this rests upon the presumption in favor of the regularity of judicial proceedings. So it does, but the rule of presumption does not stop there. Fraud is never presumed but must always be alleged and proved. On the contrary, absence of fraud is presumed. 22 Am. & Eng. Enc. Law, (2 Ed.) 1284. There is no presumption of negligence, but there is a presumption, in the absence of proof to the contrary, that a party charged with negligence is free from it, just as there is a presumption in favor of innocence, and of the performance of official duty and the regularity of official acts.

The nature of the office of trustee and the extent of the powers vested in him confirm this view. He holds the legal title with full power to convey it. "Trustees of real or personal estate may, at law, sell, convey, assign, or incumber the same, as if they were the beneficial owners, and each of several trustees may exercise all his rights of ownership. If the trustees are joint tenants, each may receive the rents, and each may sever the joint tenancy by a conveyance of his share, and each may collect the dividends on stocks, and on the death of one, the survivor may sell the whole estate. The general power of a trustee to sell and convey the estate is co-extensive with his ownership of the legal title; and this general power over the legal title is entirely distinct from the execution of a special power given in respect to the sale of an estate. Though the trustees may thus sell, even in breach of the trust, a conveyance without consideration will not injure the *cestui que trust;* as the grantee, who is a volunteer, will hold upon the same trusts as the trustee held, and if the purchaser for a valuable consideration have notice of the trust he will still hold the estate upon the trust." Perry on Trusts, section 334. "As a general rule, the legal estate in the hands of a trustee has, at common law, precisely the same properties, characteristics, and incidents, as if the trustee were the absolute beneficial owner. The legal title vests in him, together with all the appurtenances and all the convenants that run with the land. The trustee may sell and devise it, or mortgage it, or it may be taken on execution. It may be forfeited, and it will escheat on failure of heirs, and so it will descend to heirs on the death of the trustee. All these properties and incidents attach to the legal estate at common law, whether in the hands of a trustee or of an absolute owner; but these incidents do not generally interfere with the proper execution of the trust, for all conveyances and all incumbrances made or imposed upon the estate by the trustee, for other purposes than those of the trust, or in breach of the trust, are utterly disregarded by a court of equity, whatever may be the effect of such conveyances or incumbrances in a court of common law." *Id.* section 321. "It is now a universal rule that all those who take under the trustee, except purchasers for a valuable consideration without notice, take subject to the trust, and they must either execute the trust

themselves, or convey the property to new trustees appointed by the court." *Id.* section 346.

The application of these principles to the facts of the case make it clear that a contract of sale has been made between the trustee and the purchaser. He has sold and agreed to convey the legal title over which he had full power. He has power to sell and convey even in violation of the terms of the deed of trust. The purchaser deals with him as the owner of the legal title, competent to convey it. Although he can convey it and the purchaser may take it from him, it will be subject in the hands of the purchaser to any and all equities which the grantor in the deed of trust may be able to establish against him, even to the extent of showing that the sale was made in a manner not authorized and is, therefore, invalid, as a result of which the right to have a reconveyance might be maintained. But these equities against the purchaser and in the property in his hands in no way limit and control the power of sale vested in the trustee. They are separate and distinct matters to be asserted by the grantor against the property in the hands of the purchaser and he must plead them and prove them in order to obtain relief. Hence, as against a third party, one in no way connected with the deed of trust, except by his act of purchase, and in no way charged with the responsibility for the regularity of the proceedings, nor having power of control over them, nor affected with any notice of irregularities or equities, reason, justice and authority make it manifest, that the complainant must take upon himself the burden of showing wherein the sale is illegal or an equity against the purchaser arises in his favor. It is the assertion of a cause of action, the whole burden of which, is upon the plaintiff.

The allegation of the bill in respect to the insufficiency of the advertisement is that it was not published in the manner prescribed by the deed of trust; that no copy of the notice was served upon the grantor in said deed of trust; and that the notice was not posted at the front door of the court house as required by law. The deed of trust provided that, "Notice of any such sale may be given by advertisement, published thirty days previous therto in some newspaper printed in the city of Wheeling, W. Va." It was published in the Wheeling Intelligencer, a daily newspaper, once a week for a period covering

thirty days, as averred in the answer. In the bill it is charged that it was published in six issues, but as to whether there was a publication in each week during the thirty days, the bill is silent. This seems to be regarded as unimportant by the counsel for appellant, his contention being that the deed of trust required the notice to be published each day for thirty consecutive days before the sale. The mode of giving notice prescribed in the deed of trust, takes the place of that prescribed by the statute and the inquiry is only whether it was given as required by the deed of trust. The language of a statute somewhat similar to that used in the deed of trust has been construed by this Court in *Benwood* v. *Railway Co.*, 53 W. Va. 465, (44 S. E. 271). Point two of the syllabus gives the language construed as well as the conclusion upon it as follows: "A statute requiring notice to be given by publication for thirty days in some newspaper of general circulation published in a county or city, is sufficiently complied with by publication in the successive issues of a weekly newspaper through the period of time named."

The bill alleges that Hugh L. Irwin was the attorney in fact of the American Fire Clay Company to accept service of process or notice and resided in the county of Hancock, but the notice was not served upon him nor upon the grantor in the deed of trust, nor upon any agent of the grantor. It is admitted that none of the officers of the company were in the county, and that it was a defunct organization, and that Irwin was its attorney in fact to accept service of process, but the answers deny that he resided in the county, and aver that he was not in the county, but spent the most of his time at Pittsburg, and in going about the country as a traveling salesman. From the testimony of Irwin, whose deposition was taken, it appears that he once resided in Hancock County and owned property there, but some years before this sale, had sold his property and removed to Genoa, Ohio, where he and his wife, for a time, kept house in rented property and afterwards in property which he purchased, and that his business required his presence in Pittsburg during the greater portion of his time, and, at times, for a month or two, his wife would go to Pittsburg and stay with him, leaving the house shut up and taking a part of the furniture with her. After moving away,

Irwin only came back into the county on occasions of business
or to visit his mother and a sister who resided in New Cumber-
land. On the occasion of the sickness and death of his mother,
early in November, 1898, he was in New Cumberland. He
still claimed to be a citizen of that county and exercised there
his right to vote, which had been contested on two occasions.

Service of the notice upon the grantor, his agent or personal
representative is required to be made "if he or they be within
the county," not if he or they be domiciled in the county or
reside in the county, but we must adopt some legal standard
for determining what this means, what the legislature intended.
To say that it was intended that the trustee is bound to watch
for, and avail himself of, a mere casual and temporary presence
in the county, whether for an hour or a day, or at night or in
the day time, and, if it turns out that he was in the county
when the service should have been made, without the knowledge
of the trustee, by reason of which no service was had upon him,
the sale shall be void on account of non-service of the notice,
would place a construction upon this language that would
make it very inconvenient and difficult to obtain a legal execu-
tion of a trust. It would burden it with such inconvenience,
risk, and the exercise of extreme diligence, that it cannot be
supposed that the legislature intended it. The whole doctrine
of personal service for judicial purposes depends upon the
residence of a party within the territorial jurisdiction of the
court. Although a non-resident, found casually within the
jurisdiction, may be served with process, if he be not so found,
he is uniformly treated and proceeded against as a non-resi-
dent, although his domicile may be within the State. Ordin-
arily, if he is a resident, the law of process disregards the
question, whether the place in which he resides is his domicile.
The principle of analogy, as well as the supposed intention of
the legislature not to burden the trust with great inconvenience,
expense and trouble, enforces the conclusion that the legislature
meant that the grantor, his agent or personal representative,
shall have notice if he resides in the county. This seems to be
the position of counsel for the appellees, while that of counsel
for the appellant appears to be, that there shall be service upon
the grantor, his agent or personal representative if domiciled
within the county. The distinction between residence and domi-

cile in the law of process and attachment is very clearly marked by the decisions. Domicile is a much broader term than that of residence. A man may have his domicile in one state and actually reside in another, or in a foreign country. If he has once had a residence in a particular place and removed to another, but with the intention of returning after a certain time, however long that may .be, his domicile is at the former residence and his residence at the place of his habitation. Residence and habitation are generally regarded as synonymous. "A resident and an inhabitant mean the same thing. A person resident is defined to be one 'dwelling or having his abode in any place;' an inhabitant, 'one that resides in a place.' These terms will therefore be used synonymously, as they may occur in the cases cited." Drake on Attach. section 59. The question of domicile is not involved in determining whether a person is a resident of a state or county. *Id.* section 58. The compatibility of domicile in one state with actual residence in another has been asserted and acted upon in the law of attachment by the courts of New York, New Jersey, Maryland, North Carolina, Mississippi and Wisconsin. *Id.* section 65. The same conclusion was reached by this Court in *White* v. *Tennant*, 31 W. Va. 790, in determining what laws should control and govern the distribution of the personal estate of one who was domiciled in one state and died in another. The distinction was clearly marked in *Burt* v. *Allen*, 48 W. Va. 154, involving the attachment laws and exemption laws of this State. There, JUDGE BRANNON, delivering the opinion of the Court, said: "Domicile means more than residence. It imports residence and fixed intention to remain there. A man may be a resident of a locality without having his domicile there. He can have only one domicile at the same time, though he may have more than one residence." This makes it clear that, whatever may have been the domicile of Irwin at the time of the sale, a matter which need not be, and is not now, decided, he was clearly not a resident of Hancock County, and failure to serve the notice upon him, even if he be regarded as an agent of the American Fire Clay Company, within the meaning of the statute, another matter which need not be, and is not, decided here, does not render the sale invalid.

As has been indicated, Haigh, Trustee, had sold the property

involved in 1896 and Atkinson had purchased it. It further appears that a deed was made to Atkinson. It seems, however, that he paid no part of the purchase money, for the reason that he took the property subject to the debt due the college and the balance of the purchase money was due himself. In addition to this, the bill and amended bill alleged that he, Atkinson, had no notice of the sale until about ten days prior thereto. Although not argued this presents the question whether he was entitled to notice by personal service, one which has not been decided by this Court. The statute limits the requirement of personal service to the grantor, his agent or personal representative. This does not include his assigns or his heirs, unless, by construction, the statute be given effect beyond its letter. Upon a hasty consideration of the question, it would seem to be equitable and just, that one who stands in the shoes of the grantor in respect to the property, as purchaser thereof, should have personal notice of the sale. As courts of equity proceed upon considerations of justice and fairness between man and man as a rule, it might be supposed that such courts would so construe the statute. But they do not construe statutes differently from courts of law, and they are equally bound by the stipulations of the parties where the trust is express and its terms have been reduced to writing. Therefore, when one comes into a court of equity asserting a right under an instrument creating the trust, equity can only give him what, by a fair legal construction of the terms of his contract, he is entitled to. He can have no more than the contract calls for. "It must also be observed that if a trust is declared in writing, courts never permit parol proof of a trust to contradict an intention expressed upon the face of the instrument, for that would be to allow parol evidence to vary, contradict or annul a written instrument." Perry on Trusts, section 76. That this is the true view, appears to have been the opinion of Professor Minor, who, in the second volume of his Institutes, at page 346, after referring to the jurisdiction in equity, occasioned by the death of the debtor, which seems to have been acknowledged in Virginia, says: "Upon this conclusion, it is possible that the terms of the present statute, prescribing the duties of trustees, may exercise some control. * * * And it is the practice for the trustee to proceed to sell without regard to the debtor's

death." Our statute is very similar, and where it is part of the contract, as it is here on the question of notice, the court can award no more under the statute than it gives. The courts of Illinois, North Carolina, Minnesota and New York, in determining the rights of parties under similar contracts, have confined themselves within the stipulations of the contracts and the terms of the statute. In Illinois and North Carolina, where there seems to be no statute requiring personal notice, it has been held that the mortgagor or grantor in a deed of trust is not entitled to personal notice of the sale unless stipulated for in the instrument. *Hoodless* v. *Reed*, 112 Ill. 105; *Marston* v. *Brittenham*, 76 Ill. 611; *Loan and Trust Co.* v. *Munsen*, 60 Ill. 371; *Bridgers* v. *Morris*, 90 N. C. 30; *Manning* v. *Elliott Bros.*, 92 N. C. 48; *Carver* v. *Brady*, 104 N. C. 219. The reasoning of the Illinois Court in *Loan and Trust Co.* v. *Munsen,* is, in part, as follows: "The debtor himself here prescribed the kind of notice which should be given in case of sale—it was not personal notice, but notice by advertisement in a newspaper. To say that a further personal notice was required by implication, would be to annex a condition to the power of sale, which the maker of the power did not see fit to provide, and the court would be making a contract for the parties, instead of enforcing the one made by themselves."

If it be said that the benefit of the contract made by the grantor, stipulating for personal service to himself, would pass by assignment to his grantee, the reply is that the courts do not so hold. "The words, 'personal representatives,' used in the statute relative to the foreclosure of a mortgage by advertisement, passed May 7, 1884, requiring the notice to be served upon the mortgagor or his personal representatives, means 'executors or administrators,' and not heirs or devisees. Where there is no personal representative to be served with notice, that provision of the statute is inoperative, and the foreclosure will be good if conducted in the mode otherwise prescribed in the statute." *Anderson* v. *Austin*, 34 Barb. (N. Y.) 319. To allow a statutory requirement of notice to the grantor to attach to property and pass by assignment, as an incident to a conveyance thereof by the grantor, would subject the creditor to the burden and expense of notifying every heir in case of the death of the debtor, and every subsequent lienor by a

deed of trust as well as purchasers. It must be assumed that, if the legislature had intended to impose upon the trust deed creditor all these additional requirements, and expose him to the risks and delays in the enforcement of his claim, which inevitably attend them, it would have made the language of the statute broader so as to expressly include them. As this is the clear and logical result of the application of well settled principles to the statute, it becomes unnecessary to decide whether the stipulation contained in the deed of trust, concerning the notice to be given, and omitting the requirement of personal service, relieves the trustee of the duty of making such service under the statute.

Failure to post the notice at the front door of the court house is affirmed by the plaintiff and denied by the defendants in the court below, and there is no evidence to support either side of the issue. The burden being upon the plaintiff, he fails to make out a case in that respect.

The validity of the sale is contested on the further ground that the trustee has not made his report as required by section 3 of chapter 87 of the Code. As the making of such report is always subsequent to the sale, and relates only to the distribution of the proceeds, failure on the part of the trustee to perform that duty could not be permitted to undo a valid sale.

It remains now to inquire whether the sale ought to be set aside upon the ground of fraud. Under this heading it is urged that there was collusion between the trustee and the purchasers; that the sale was not made for cash as advertised, but on credit contrary to the terms of sale; and that under the circumstances, the sale wrought gross injustice and wanton injury upon the appellant, without any equity demanding it upon the part of the college. The provision of the deed of trust concerning the terms of sale reads as follows: "Any sale of the property made by the trustee by virtue of this deed may be for cash or on credit with good security or partly for cash and partly on credit with good security." The trustee was also attorney for the college, and the argument is that, by way of favor and partiality toward his client, he made the terms of sale cash, failed to give appellant personal notice of the sale, thereby rendering it impossible for him to make such preparation for bidding as he might otherwise have made, entered into

a collusive agreement with Porter and Campbell with the con-
sent of the college, whereby they should purchase the property
ostensibly for cash, but really on credit, and thereby oppressed
and injured the appellant, in violation of his duty as the agent
of both parties.  It has been decided that the trustee is the
agent of the grantor and creditor, but not that he is the agent
of the creditor in the deed of trust executed to him and of
other lien creditors, nor of the grantor and purchasers at the
sale.  This distinction is not regarded as important, but its
tendency is toward clearness and accuracy in the disposition of
this question.  In making the terms cash, the trustee acted
within the strict letter of the contract, the grantor having
authorized a sale for cash, and in failing to give the appellant
personal notice of the sale, the trustee violated no duty imposed
upon him, as has been demonstrated.  Of the alleged agree-
ment and understanding between the trustee and the purchaser,
prior to the sale, that they should purchase at the price at
which the land was knocked down to them, and have the benefit
of time on the purchase money, there is no proof.  What is
urged as evidence is the language of the trustee in his deposi-
tion on cross-examination, where he said: "Immediately after
making the sale, I went down to the bank with Judge Campbell
where the arrangement was made.  He signed the notes there
and I then went to Mr. Porter's house and got his signature to
the notes," it being pointed out that the word "immediately,"
by its definition, shows that his going down to the bank with
Judge Campbell was in pursuance of some agreement, and
none could have been made after the sale and before they
went down there, and that, therefore, it must have been made
prior to the sale.  Even learned men are not supposed to use
words in the sense of their exact definitions at all times,
and it is a well known rule of law that the whole of language
importing an admission must be taken, read and considered
together.  One word or clause cannot  be permitted to control
other language in conflict with it.  Cranmer and Porter both
testify that there was no such agreement or arrangement.
Cranmer says the time arrangement was suggested after the
sale by Campbell because of the prevalence of rumors of litiga-
tion, and he, as the attorney of the college, his client, which
is entitled to receive all the purchase money, consented to take

five thousand dollars cash and give time as to the balance. As the charge of collusion is supported by nothing except the alleged admission, supplemented by the fact that time was given, and the whole of the testimony on that question clearly negatives the proposition, there is no admission nor any evidence of the charge. Clearly, there was no fraud on the part of the trustee, and unless there was such inadequacy of price as calls upon a court of equity to set aside the sale, there is nothing shown which even savors of fraud.

There is some testimony tending to show inadequacy. One man, the president of the defunct company, testifies to thirty thousand dollars as the value of the property, but others say that it brought all it was fairly worth. There was competitive bidding, A. F. Wilkins having run it up to twelve thousand, nine hundred dollars. The value of the property is a question of fact and has been passed upon by the court below, the issue, as made by the witnesses, being whether the property brought its full value, not the amount of inadequacy. Inadequacy of price must be very great to warrant the court in setting aside a sale. In the absence of evidence tending to impeach the fairness of a sale, "It cannot be set aside for inadequacy of price, unless it be so inadequate as to justify the presumption of fraud and collusion, and, to justify such presumption from this inadequacy alone, it must be so strong and manifest an inalequacy as to shock the conscience and confound the judgment of any man of common sense. Half the estimated value of such property is not such an inadequacy." *Bradford* v. *McConihay,* 15 W. Va. 732. A sale under a deed of trust will not be set aside unless for weighty reasons. *Corruthers* v. *Harris,* 23 W. Va. 177. Even in the case of judicial sales, where no advance bid has been made, and the objection to confirmation is grounded upon the inadequacy of price, supported only by parol evidence, the proof must be very clear. *Connell* v. *Wilhelm,* 36 W. Va. 598. In another case of judicial sale, where a like objection was made, JUDGE BRANNON, delivering the opinion of the Court, said: "Affidavits of individual opinion of the worth of the land placed the property higher; but that is only opinion. There was no offer by any one of greater price; no guaranty that on a third sale the land would fetch more." *Schmertz* v. *Hammond,* 51

W. Va. 408. The argument in brief of counsel for appellant is that this sale ought to be treated as an unconfirmed judicial sale. If that could be conceded, the sale could not be set aside upon the grounds thus far considered, under the authorities cited, as well as many others that might be referred to. It seems that in the amended bill there was a sort of an offer to pay more for the property, but it was not accompanied by any bid, or bond or guaranty of any kind, and it gave no assurance that, if another sale should be allowed, a larger price would be obtained. Where a judicial sale has been regular and there is an effort to defeat confirmation on the ground of inadequacy of price, there must be an upset bid, accompanied by security. *Kable* v. *Mitchell,* 9 W. Va. 492: Surely a subsequent lienor or purchaser of property, sold under a deed of trust, is entitled to no greater equity against a purchaser under a prior deed of trust, at a sale made by the trustee, than a lienor upon, or owner of, property sold at judicial sale can claim.

As to the alleged credit of three hundred dollars, the evidence shows that the note was simply held as collateral security for the trust debt and was not to be credited until paid. It was not paid, there being no pretence that anything was paid on it excepting fifty-four dollars. This payment is admitted and no credit is given for it, it seems, but the sale cannot be set aside on that account. The following language of Moncure, President, in *Hogan* v. *Duke,* 20 Grat. 244, approved and applied in *Sandusky* v. *Faris,* 49 W. Va. 150, settles this contention: "The bill does not allege any attempt by the plaintiff to have a settlement of any of these matters with Duke, or any refusal of Duke to settle them. On the contrary, it alleges that he promised to credit them but has failed to do so. *Non constat* that he was not willing to credit them, when the balance due on the bonds was ready to be settled by the debtor, or out of the proceeds of the trust sale of this property." The college people admit the payment of fifty-four dollars and that it is to be credited on the debt. Hence, there is no controversy about it, and no reason for any interposition on the part of a court of equity upon that ground. Even if there were a controversy, it is not clear that the sale should be set aside on account of it, for it is not a matter with which the purchaser has anything to do, but is such as may be settled by a court of

equity between the parties who are concerned in it, without affecting the sale.

For the reasons herein given, the decree complained of should be affirmed with costs.

*Affirmed.*